# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

JAY KEVIN COLLIER,

        Plaintiff,

v.                             Case No:   2:16-cv-527-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

## OPINION AND ORDER

Plaintiff Jay Collier seeks judicial review of the denial of his claim for Social Security disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the briefs and the applicable law.   For the reasons discussed herein, the decision of the Commissioner is **REVERSED**, and this matter is **REMANDED** pursuant to 42 U.S.C. § 405(g), sentence four.

### I.    Issues on Appeal[1]

Plaintiff raises two issues on appeal: (1) whether the Administrative Law Judge ("ALJ") properly considered the evidence of record in assessing Plaintiff's residual functional capacity ("RFC"); and (2) whether substantial evidence supports

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

the ALJ's determination that Plaintiff's allegations of disabling limitations are not fully credible.

## II.     Procedural History and Summary of the ALJ's Decision

On June 14, 2012, Plaintiff filed his applications for DIB and SSI.   Tr. 196-210.   Plaintiff alleged disability beginning on April 16, 2012 due to a stroke, poor short-term memory and headaches.   Tr. 35, 70, 88, 222.   The claims initially were denied on August 10, 2012 and upon reconsideration on September 10, 2012.   Tr. 114-132, 135-146.   Plaintiff requested a hearing before an ALJ and received a hearing before ALJ David J. Begley on January 28, 2015.   Tr. 27-69.   Plaintiff, who was represented by an attorney, and Vocational Expert ("VE") Jane Beougher appeared and testified at the hearing.   *See* Tr. 27.

On March 3, 2015, the ALJ issued a decision finding Plaintiff not disabled from April 16, 2012 through March 3,015, the date of the decision.   Tr. 12-21.   The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2014.   Tr. 14.   At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since April 16, 2012, the alleged onset date.   *Id.*   At step two, the ALJ found that Plaintiff "has the following severe impairments: hypertension; status post lacunar stroke; headaches; chronic pulmonary disease; depression."   *Id.*   At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P,

Appendix 1." Tr. 15. The ALJ then determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b),[2] except that:

> [Plaintiff] would need to avoid climbing ladders, ramps, and scaffolds. He is further limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. In addition, he would need to avoid concentrated exposure to extreme heat, humidity, excessive noise, bright lights, and sunlight outside of normal office lighting. He would also need to avoid concentrated exposure to irritants such as fumes, odors, dust, gases, and poorly ventilated areas. Additionally, he would need to avoid slippery and uneven surfaces as well as hazardous machinery and unprotected heights. Finally, he is limited to doing simple routine repetitive tasks; involving only simple, work-related decisions, with few, if any, work place changes.

Tr. 16. Next, the ALJ found that Plaintiff is unable to perform any of his past relevant work as a carpenter, carpenter's foreman or air conditioner technician helper. Tr. 20. At step five, in considering Plaintiff's RFC, age, education, and work experience, the ALJ found that jobs exist in significant numbers in the national economy Plaintiff could perform. *Id.* Thus, the ALJ concluded that Plaintiff had not been disabled from the alleged onset disability date of April 16, 2012 through the date of the decision. Tr. 21.

---

[2] The regulation defines light work as work that involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities. If someone can do light work, [it is determined] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on June 13, 2016.    Tr. 1-3.    Accordingly, the ALJ's March 3, 2015 decision is the final decision of the Commissioner.    Plaintiff filed an appeal in this Court on June 30, 2016.    Doc. 1.    Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review.    Docs. 18, 20.

### III.    Background and Relevant Medical History

Plaintiff alleges that on April 12, 2012, while operating a nail gun on a construction site, he developed slurred speech, numbness in his right arm, dizziness and loss of balance.    Tr. 284, 423.    For the next two days, the symptoms persisted, and Plaintiff visited a nearby pharmacy to check his blood pressure, which he said was 195/122.    Tr. 307.    On April 16, 2012, Plaintiff's symptoms worsened, prompting him, at his brother's suggestion, to seek medical attention.    Tr. 284.

On April 16, 2012, Plaintiff presented to Michal Dunn, M.D., at Lee Memorial Health complaining of stroke-like symptoms.    *Id.*    Dr. Dunn detected no slurring of speech and recorded Plaintiff's blood pressure at 132/97.    *Id.*    Dr. Dunn concluded that Plaintiff had "somewhat of an unusual affect which potentially could be somewhat of an expressive deficit, which in this case would be a lacunar stroke."    *Id.* Dr. Dunn suggested Plaintiff be admitted to the hospital for further evaluation.    Tr. 285.

After admission on April 17, 2012, Chris Marino, M.D., and Sheng-Qian Wu, M.D., met with Plaintiff, who complained of slurred speech, right-hand clumsiness,

disequilibrium and hypertension. Tr. 281, 307-08. His blood pressure was elevated at 201/118, but soon thereafter fell to 152/88. Tr. 282-83. He claimed no nervousness, mood changes or depression. Tr. 282. Although Dr. Marino described Plaintiff's gait as "somewhat cautious," neither an echocardiogram nor a computed tomography ("CAT") scan of his head revealed any abnormalities. Tr. 283, 288-91. A magnetic resonance imaging ("MRI") scan, however, showed an acute lacunar infarct—indicative of a stroke—around the left internal capsule. Tr. 292. Plaintiff also underwent an ultrasound of his neck, which showed "evidence of a 16-49% stenosis [narrowing] of the proximal right internal carotid artery," and similar blockage on the left. Tr. 309. Within a few days, he left the hospital prematurely against Dr. Marino's advice because he had "gotten tired of all that testing." Tr. 443, 449.

On May 25, 2012, Advance Registered Nurse Practitioner ("ARNP") Mary Dion evaluated Plaintiff. Tr. 329-31. She found that Plaintiff had speech difficulty and slow thought process. Tr. 330. His skin was also of a "[v]ery ruddy, grayish color," and Plaintiff had ongoing hypertension, although he appeared in good health otherwise. Tr. 329-31. ARNP Dion encouraged Plaintiff to quit smoking. Tr. 331. At this point, Plaintiff was taking high blood pressure and blood thinning medication. *Id.*

On June 7, 2012, Plaintiff returned to ARNP Dion to evaluate his blood pressure and blood test results. Tr. 325. Plaintiff reported that he was "feeling well and denie[d] chest pain, headaches and palpitations. He [was] not exercising and

[did] not restrict his sodium intake." *Id.* Although Plaintiff's blood pressure was "running about 140/100," and he appeared weathered and had a "ruddy" complexion, his physical exam was unremarkable. Tr. 325-26. He appeared to be in good health, despite feeling "slow" since his stroke. Tr. 326. ARNP Dion acknowledged Plaintiff's ongoing hypertension diagnosis and urged him to adopt healthy lifestyle habits. *Id.*

On June 22, 2012, Plaintiff followed up with ARNP Dion, who indicated that Plaintiff was feeling weak from the stroke, yet "he [was] feeling well and denie[d] chest pain, cough, dizziness, headaches and palpitations. He [was] not exercising and [] restrict[ed] his sodium intake." Tr. 321. At this time, he was still taking his high blood pressure and blood thinning medication. Tr. 323. Plaintiff continued to smoke, although he smoked less. Tr. 321. Plaintiff was counseled to eliminate smoking and to begin walking with the goal of exercising 30 minutes each day most days of the week. Tr. 322. A subsequent evaluation with ARNP Dion on July 26, 2012 led to substantially identical findings and recommendations, except that Plaintiff had begun to take small walks. Tr. 349.

On August 7, 2012, Plaintiff was referred to Eshan M. Kibria, D.O., for an independent medical examination for Social Security disability purposes. Tr. 335. Dr. Kibria noted Plaintiff had problems with dizziness and hypertension, as well as "little tiny headaches and both hands go numb at night." *Id.* Plaintiff also experienced shortness of breath after mild exertion and trouble with writing, sleeping and exposure to sunlight. *Id.* Plaintiff further reported that he had not worked

since 2010. *Id.* Nonetheless, Plaintiff possessed a normal speech pattern without slurring and a normal fund of general information. Tr. 335-36. Dr. Kibria's impression diagnosis was that Plaintiff had speech problems around the time of the stroke, which had since "cleared up." Tr. 336. Furthermore, Plaintiff had hypertension and "[s]light slow processing requiring occasional repeating. No visual field defect or any focal motor or sensory problems. Positional dizziness when [he] stands up or turns too quick [*sic*] on Metoprolol. Memory seems ok." *Id.*

On August 28, 2012, Plaintiff presented again to ARNP Dion, who noted that Plaintiff was feeling well and denied headaches, numbness or palpitations. Tr. 344. Plaintiff complained that "all the medications [were] making him dizzy." *Id.* Plaintiff reported that he was exercising, walking one mile per day and restricting his sodium intake. *Id.* He also said that he occasionally checked his blood pressure at a local pharmacy, and it was "always high." *Id.* His skin appeared warm, dry and ruddy, and he was diagnosed with malignant, uncontrolled hypertension. Tr. 345. ARNP Dion switched one of his medications, and encouraged him to stop smoking, increase activity and comply with his medication regimen. Tr. 345-46.

From September through December 2012, Plaintiff underwent a series of almost-weekly Coumadin (warfarin) clinics to help regulate the coagulative properties of his blood. Tr. 355-76. His warfarin intake levels were frequently adjusted accordingly. *Id.*

Plaintiff saw ARNP Dion on December 5 and 7, 2012 to follow up on his hypertension levels, which remained high. Tr. 377-78, 381. Plaintiff stated that

exposure to the sun caused headaches, and contradictory evidence in the record exists on these dates regarding Plaintiff's sodium intake, exercise habits and at-home blood pressure monitoring. Tr. 377, 381.[3] Although Plaintiff's skin had a weathered, dusky appearance, his physical exam was unremarkable. Tr. 378. ARNP Dion counseled him to stop smoking and increased the dosage of his Diltiazem. *Id.*

On March 22, 2013, Plaintiff met with Dr. Marino for a neurological evaluation. Tr. 443. Dr. Marino noted, among other things, difficulty understanding speech, shortness of breath, wheezing, chest pain and depression. Tr. 444. Otherwise, Plaintiff appeared normal, including his gait, speech, memory and attention. *Id.* Dr. Marino stated that Plaintiff described "a level of functional impairment that is well beyond what would be expected given the small lacunar nature of his stroke. I have found no neurological explanation for this. One thought would be that he could be having general functional impairment on the basis of a post stroke depression." Tr. 445. Dr. Marino suggested that psychological and psychiatric treatment may be necessary. *Id.*

On March 29, 2013, ARNP Dion saw Plaintiff again, who complained of shortness of breath, depression and impaired memory. Tr. 535, 537. He appeared grayish and unkempt, but otherwise looked normal. Tr. 537. ARNP Dion

---

[3] A note from the medical assistant at 10:37 a.m. on December 7, 2012 states: "[Plaintiff] is exercising and does restrict his sodium intake. He does not check home blood pressures," whereas a note from ARNP Dion signed at 11:10 a.m. on the same day states: "[Plaintiff] is not exercising and does not restrict his sodium intake. He does check home blood pressures and reports that it is 'always high until his medication kicks in.'" Tr. 377. Two days earlier, ARNP Dion wrote "[Plaintiff] is not exercising and does restrict his sodium intake. He does not check home blood pressures." Tr. 381.

continued to encourage him to stop smoking, and Plaintiff declined an antidepressant at this time.   Tr. 538.

On April 29, 2013, May 29, 2013 and June 7, 2013, at the referral of Florida Division of Vocational Rehabilitation ("DVR") counselor Lucas Halverson, Plaintiff underwent a psychological assessment with Noble Harrison, Ph.D.   Tr. 448-68.   At the conclusion of the June 28, 2013 evaluation, Dr. Harrison noted high levels of depression, anxiety and frustration with his life as Plaintiff's most predominant symptoms.   Tr. 452.   Plaintiff also expressed concern that there seemed to be inadequate medical documentation to support his condition.   Tr. 451-52.   Dr. Harrison also talked to Plaintiff's mother, who corroborated many of Plaintiff's physical symptoms, yet said that he sometimes drives and fishes.[4]   Tr. 451.

As part of his assessment with Dr. Harrison, Plaintiff underwent a Wechsler Adult Intelligence Scale-IV Edition.   Tr. 452.   Dr. Harrison's diagnosed Plaintiff with mild vascular neurocognitive disorder (mild memory and attention and concentration deficits with depression, anxiety, and affective liability accompanying and enhancing the neurocognitive deficits) and somatic symptom disorder, persistent, moderate.   Tr. 457.   Dr. Harrison opined, "[i]t is my strong clinical opinion that . . . [Plaintiff's] problems are significantly less than his subjective expression of those symptoms," and that he could certainly perform a variety of indoor jobs, if not construction work.   *Id.*   Dr. Harrison's concern was Plaintiff's "expressed belief"

---

[4] "When trying to do recreational things with family members he gets confused about how to fish and how to pick the appropriate lures for fishing."   Tr. 451.

that he has worked his whole life and now thinks he deserves to not continue to work as hard and receive disability benefits. *Id.* Dr. Harrison opined that Plaintiff's returning to work "would be the best antidote to his anxiety and stress related to his physical condition." Tr. 459. He recommended to Mr. Halverson, the vocational counselor, that Plaintiff be referred for a work activity assessment to determine his physical abilities to re-enter the workforce. *Id.*

On July 2, 2013, Plaintiff presented to ARNP Janet Loo for shortness of breath. Tr. 527. ARNP Loo noted that Plaintiff did not exercise, restrict his sodium intake or check his blood pressure and continued to smoke. Tr. 527-28. Plaintiff complained of "daily headaches since his stroke," but denied taking any medications for them. Tr. 528. Plaintiff experienced possible chronic obstructive pulmonary disease ("COPD")[5] and claimed he was depressed. *Id.* Although Plaintiff's mood was dysphoric, he "adamantly refuse[d] medication for treatment." *Id.* ARNP Loo counseled him that "the only way to stop the progression of [COPD] is to stop smoking." *Id.*

On August 21, 2013, at the referral of DVR counselor Mr. Halverson, chiropractor Eric Gerken, D.C., performed a work capacity evaluation on Plaintiff that included an extended battery of physical tests. Tr. 413-41. During the visit, Plaintiff noted the following impairments: weight gain, memory loss, numbness/tingling, fainting/dizziness, headaches, balance problems, high blood

---

[5] ARNP Loo noted that symptoms of COPD include wheezing and dyspnea that occur daily. Tr. 528. Further, she stated, "current limitations in activity from his symptoms include moderate activity." *Id.*

pressure, difficulty sleeping, stress, depression, bronchitis/lung problems and shortness of breath. Tr. 420. At the conclusion of the evaluation, Dr. Gerken noted Plaintiff's stroke and hypertension, as well as COPD, sarcopenia,[6] cognitive disorder and possible peripheral neuropathy. Tr. 413. Dr. Gerken opined that Plaintiff possessed "pervasive physical limitations and activity restrictions" that would prevent him from performing his past job as a carpenter or "in any occupation in the competitive labor market at this time." Tr. 413-14.

A September 3, 2013 visit to ARNP Loo showed that although Plaintiff's hypertension was resolved, he experienced COPD and depression. Tr. 518-19. Plaintiff had been taking Albuterol for his COPD, but felt that it was not helping him. Tr. 519. Plaintiff further reported that he was "not interested in quitting smoking." *Id.* As for Plaintiff's depression, he "refused medication to this point, but [was] willing to try it [then]. He [did] not think it [would] work." *Id.* Plaintiff's physical evaluation was normal. Tr. 520. On November 6, 2013, Mr. Halverson provided a letter that Plaintiff was not eligible for vocational rehabilitation services because his disability was so severe that it precluded the possibility of potential employment. Tr. 409-10.

On November 22, 2013, Plaintiff presented to ARNP Loo and appeared generally upset and angry. Tr. 553. His blood pressure was elevated at 140/90, and he said that he was compliant with his blood pressure medication but did not want

---

[6] Sarcopenia is an age-related reduction in skeletal muscle mass in the elderly. *Sarcopenia,* Dorland's Illustrated Medical Dictionary (30th Ed. 2003).

any changes in his medications. *Id.* He was not exercising or reducing his sodium intake and reported that he did not want to quit smoking. *Id.* Although Plaintiff was frustrated at his sedentary lifestyle, he declined referral for pulmonary rehabilitation. *Id.* He also stopped taking his depression medication and refused "any more crazy medications" or rehabilitative treatment. Tr. 553-54.

Plaintiff met ARNP Loo again on May 29, 2014 for hypertension, at which point little had changed since the visit six months prior. Tr. 568. Plaintiff had elevated blood pressure as well as COPD, yet continued to neither exercise nor reduce his sodium intake and maintained his smoking habit. *Id.* ARNP Loo also noted that, despite Plaintiff's claim that he was taking his blood pressure medication, "he should have run out of his medications months ago." *Id.*

## IV.    Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).[7] The Commissioner has established a five-

---

[7] The Court notes that after Plaintiff filed his applications and the ALJ issued the decision, certain Social Security rulings and regulations have been amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments. *See e.g.*, 20 C.F.R. §§ 404.1520a, 404.1520c and 404.1527 (effective March 27, 2017); SSR 16-3p, 2016 WL 1119029 (March 16, 2016). The Court will apply rules and regulations in effect at the time of the ALJ's decision, unless regulations specify otherwise. *Green v. Soc. Sec. Admin., Comm'r*, — F. App'x —, 2017 WL 3187048, at *4 (11th Cir. July 27, 2017) (in reviewing the ALJ's decision, refusing to apply SSR 16-3p retroactively because "administrative rules are not generally applied retroactively."); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("[C]ongressional enactments and administrative rules will

step sequential analysis for evaluating a claim of disability.    *See* 20 C.F.R. §416.920.

The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner.    *Id.* at 933; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).    The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.    *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).    The Commissioner's findings of fact are conclusive if supported by substantial evidence.    42 U.S.C. § 405(g).    Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would

---

not be construed to have retroactive effect unless their language requires this result."); 20 C.F.R. § 404.1527 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").    *See also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (holding that when the Appeals Council denies review of the ALJ's decision, appellate courts review the ALJ's decision as the Commissioner's final decision).

accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)). The Court reviews the Commissioner's conclusions of law under a *de*

*novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## V.    Discussion

### a.    Whether the ALJ properly considered the evidence of record in assessing Plaintiff's RFC

Plaintiff first contends that the ALJ erred in failing to consider the opinion of DVR counselor Lucas Halverson. Doc. 24 at 9. Plaintiff argues that instead of giving great weight to Mr. Halverson's opinion, the ALJ ignored it. *Id.* The Commissioner responds that disability determinations by other governmental entities are not binding on the agency. Doc. 25 at 13.

Mr. Halverson, in his official capacity for the Florida Department of Education DVR, wrote a letter to Plaintiff on September 6, 2013 denying him eligibility for vocational rehabilitation services, explaining:

> It has been determined that you are not eligible for vocational rehabilitation services because your disability is too severe at this time for rehabilitation services to result in an employment outcome. Evaluations suggest that you continue to seek annual neuropsychological evaluation and physical/occupational therapy evaluations to determine any changes in your occupational competitiveness, if any. You are encouraged to continue your physician care/recommendations as their services are more appropriate for you at this time then [sic] Vocational Rehabilitation. Since it has been determined you are not feasible for competitive employment, your case record with Vocational Rehabilitation will be closed effective 09/06/2013.

Tr. 409. The letter did not contain any other information. The ALJ did not mention this finding of disability in his opinion. *See* Tr. 12-21.

The regulations provide that the final decision of disability rests with the Commissioner and must be based on social security law, not the rules of other

agencies.   20 C.F.R. §§ 404.1504, 416.904.   Accordingly, disability findings of other agencies are not binding on the Commissioner.   *Id.*   Nonetheless, in the Eleventh Circuit, "[t]he findings of disability by another agency, although not binding on the [Commissioner], are entitled to great weight." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983).

The Commissioner is "required to evaluate all the evidence in the case record that may have a bearing on [its] determination or decision of disability, including decisions by other governmental and nongovernmental agencies.   Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered."   SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006) (internal citations omitted).   Because other agency decisions and the evidence used by other agencies may provide insight into the claimant's mental and physical impairments, the Commissioner is required to evaluate them in accordance with 20 C.F.R §§ 404.1527 and 416.927 and SSR 96-2p and 96-5p.   *Id.* at *7. Furthermore, although "other agencies may apply different rules and standards than [the Commissioner] do[es] for determining whether an individual is disabled," the ALJ "should explain the consideration given to these decisions in the notice of decision for hearing cases."   *Id.*

The Court finds that the ALJ erred by not discussing Mr. Halverson's opinion at all, although he analyzed certain evidence relied upon by the DVR.   *See* Tr. 14-15, 18-19.   Specifically, both Plaintiff's psychological evaluation with Dr. Harrison

and work capacity evaluation by Dr. Gerken were conducted at the referral of the DVR. Tr. 413-41, 448-68.

The ALJ discussed Dr. Gerken's opinions about Plaintiff's functioning. Tr. 19. The ALJ found that Dr. Gerken's opinions that Plaintiff does not possess the potential to improve his physical limitation and that Plaintiff is not feasible for employment in any occupation are inconsistent with the findings of Dr. Marino, a neurologist. Tr. 19. The ALJ further found that Dr. Gerken is not an acceptable medical source; "[i]n fact, [chiropractors] are considered to be in the same class as lay witnesses." *Id.* Accordingly, he assigned little weight to these opinions. *Id.*

Furthermore, in March 2013, Dr. Marino[8] performed a follow-up exam of Plaintiff. Tr. 443-45. Dr. Marino noted that he previously examined Plaintiff in April 2012 and December 2012. Tr. 443. In April 2012, Plaintiff had a carotid ultrasound showing no significant stenosis and an echocardiogram showing no major cardio embolic source of embolization. *Id.* In December 2012, Plaintiff presented to him with complaints of inability to work, slow thought process, low energy, lack of motivation and difficulty walking. *Id.* Dr. Marino's neurologic examination of

---

[8] Although it appears the DVR considered Dr. Marino's treatment notes from March 22, 2013 in rendering its decision, the Court is unable to make this finding based on the evidence of record. Tr. 442-47. Dr. Marino's treatment notes are part of the same exhibit, Exhibit 8F, which includes, among other things, the DVR's decision and the evaluations of Drs. Gerken and Harrison. Tr. 408-516. Dr. Gerken's evaluation that precedes Dr. Marino's treatment notes is stamped as received by the "VR-Unit 24D" on September 5, 2013. Tr. 412. Dr. Harrison's evaluation that follows Dr. Marino's treatment notes also is stamped as received by "Vocational Rehabilitation Unit 24D" on July 15, 2013. Tr. 448. The DVR's decision does not contain, however, any reference to Dr. Marino's treatment notes or list of evidence that the DVR considered. Tr. 409-10. Neither did the ALJ address this issue in his decision. Tr. 12-21. As a result, the Court is unable to decide whether all the evidence used by the DVR is in the record and whether the ALJ appropriately considered it. *See id.*

Plaintiff, however, was objectively normal, and Plaintiff's blood testing was generally unrevealing. *Id.* In March 2013, Plaintiff presented with the same symptoms. *Id.* Dr. Marino concluded, "[a]s before, [Plaintiff] is describing a level of functional impairment that is well beyond what would be expected given the small lacunar nature of his stroke. I have found no neurological explanation for this." Tr. 445. He added, "[o]ne thought would be that he could be having general functional impairment on the basis of a post stroke depression." *Id.* Dr. Marino referred Plaintiff for a psychological consultation and noted Plaintiff may require psychiatry consultation as well. *Id.* In assessing Plaintiff's RFC, the ALJ considered and discussed Dr. Marino's findings. Tr. 18.

As noted above, Plaintiff's psychological evaluator, Dr. Harrison, opined that "[Plaintiff's] problems are significantly less than his subjective expression of those symptoms." Tr. 457. Dr. Harrison noted that Plaintiff and his mother held a "strong belief" that Plaintiff should achieve disability status. *Id.* Dr. Harrison expressed concern regarding Plaintiff's belief that "he has worked hard his whole life and now he thinks he deserves to not have to continue to work hard and should be able to get disability status because of his long years of hard work." *Id.* Moreover, Plaintiff depended on his mother with limited resources, which complicated Plaintiff's situation and added to his distress. *Id.* Therefore, Dr. Harrison opined that once Plaintiff begins to work and be more productive, his overall anxiety and fears about his neurological condition will dissipate significantly. *Id.*

The ALJ also explicitly discussed Dr. Harrison's opinion and found it consistent with the record as a whole. Tr. 19. The ALJ further noted that no treating mental health evidence existed supporting Plaintiff's subjective allegations and contradicting Dr. Harrison's opinion. Tr. 19. Accordingly, the ALJ assigned "some weight" to Dr. Harrison's opinion. *Id.*

Nonetheless, the ALJ here did not even mention the DVR's determination in his decision. *See* Tr. 12-21. As noted, the DVR's determination regarding Plaintiff's disability, while "not binding on the [Commissioner, is] entitled to great weight." *Bloodsworth*, 703 F.2d at 1241. Furthermore, the Commissioner cannot ignore but must consider the DVR decision and also explain the consideration given to this decision. *See* SSR 06-03p, 2006 WL 2329939, at *6-*7 (Aug. 9, 2006). The Eleventh Circuit has held that an ALJ's discussion of underlying medical evidence is not sufficient to meet this requirement. *Williams v. Barnhart*, 180 F. App'x 902, 902 (11th Cir. 2006).

Courts in this district have found remand appropriate when, as here, the ALJ did not meaningfully address other agency decisions. *Salamina v. Colvin*, No. 8:12-cv-1985-T-23TGW, 2013 WL 2352204, at *4 (M.D. Fla. May 29, 2013) ("It is recognized that the [ALJ] referred to and discussed the medical records from the [Veterans Administration] in her decision. That discussion, however, does not substitute for consideration of the rating decision itself."); *Smith v. Astrue*, No. 3:08-cv-406-J-TEM, 2009 WL 3157639, at *6-*7 (M.D. Fla. Sept. 25, 2009) (holding that the ALJ erred by not addressing the plaintiff's Veterans Administration disability

determination); *Gonz v. Comm'r of Soc. Sec.*, No. 6:12-cv-614-Orl-GJK, 2013 WL 4494313, at *2-*5 (M.D. Fla. Aug. 20, 2013) (finding remand appropriate because the ALJ did not "engage in any meaningful evaluation of the [Veterans Administration's] decision" regarding the plaintiff's disability). As a result, the Court finds that the ALJ erred by not discussing at all the DVR's disability decision.

Compounding this error, despite his duty to consider the evidence used by the DVR, the ALJ did not fully develop the record to ascertain the list of evidence relied upon by the DVR or specifically discuss that he considered and evaluated the DVR's evidence. *See* Tr. 12-21; SSR 06-03p, 2006 WL 2329939 at *7 (Aug. 9, 2006) ("[The Commissioner] will evaluate the opinion evidence from medical sources, as well as 'non-medical sources' who have had contact with the individual in their professional capacity, used by other agencies, that are in our case record. . . .). As a result, the Court is unable to conclude that the ALJ appropriately developed the record and evaluated the evidence used by the DVR. *See generally* Tr. 12-21. Although the Court finds remand on the above grounds appropriate, it will address Plaintiff's remaining arguments.

Plaintiff next contends that the ALJ did not adequately analyze Dr. Gerken's opinion by inaccurately characterizing it as a "lay" opinion. Doc. 24 at 9. Plaintiff argues that although Dr. Gerken is not an "acceptable medical source," his opinion "'is important and should be evaluated on key issues,' which clearly distinguishes it from the treatment of lay testimony." Doc. 24 at 10 (quoting SSR 06-03p).

The Court finds that the ALJ's mischaracterization of Dr. Gerken's opinion is a harmless error because Dr. Gerken is a non-medical source. *See Diorio v. Heckler,* 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error doctrine to erroneous statements of fact made by the ALJ). The Eleventh Circuit has noted that "an ALJ has no duty to give significant or controlling weight to a chiropractor's views because, for [Social Security Administration] purposes, a chiropractor is not a 'medical source' who can offer medical opinions." *Miles v. Soc. Sec. Admin., Comm'r,* 469 F. App'x 743, 745 (11th Cir. 2012); *see also Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1160 (11th Cir. 2004) (holding that the ALJ's decision to discount the opinion of the claimant's treating chiropractor was supported by substantial evidence as a chiropractor is not considered an "acceptable source" and thus cannot establish the existence of an impairment and his findings were inconsistent with his own treatment notes).

Furthermore, Dr. Gerken's opinion at issue addresses an issue exclusively reserved for the Commissioner. Doc. 24 at 9. Specifically, Dr. Gerken opined that Plaintiff is "not feasible for employment in any occupation in the competitive labor market at this time." Tr. 414. Opinions on some issues, such as whether the claimant is disabled or unable to work, "are not medical opinions . . . but are, instead, opinions on issue reserved to the Commissioner because they are administrative findings that are dispositive of the case; i.e. that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also* SSR 96-5p; *Hutchinson v. Astrue,* 408 F. App'x 324, 328 (11th Cir. 2011); *Miles,* 469 F. App'x at

745 (determining that "even a medical source's statement that a claimant is 'unable to work' or 'disabled' does not bind the ALJ, who alone makes the ultimate determination as to disability under the regulations"). Accordingly, determining whether Plaintiff is employable is a vocational issue exclusively reserved for the Commissioner. *Hutchinson*, 408 F. App'x at 328. Because Dr. Gerken, who is a non-acceptable medical source, provided a vocational opinion, the Court finds that the ALJ's mischaracterization of Dr. Gerken's opinion is a harmless error. Tr. 414; *See id.* Nonetheless, because this case must be remanded for the ALJ to consider and address the DVR's decision and evidence, the Court also will direct the ALJ to reassess Dr. Gerken's opinion.

> b. *Whether substantial evidence supports the ALJ's determination that Plaintiff's allegations of disabling limitations were not fully credible.*

Plaintiff contends that the ALJ erred in assessing Plaintiff's credibility. Doc. 24 at 11-13. In particular, Plaintiff challenges the ALJ's assessment of Plaintiff's non-compliance, lack of alternative treatment and attitudes about work. *Id.* at 12. Plaintiff argues that the ALJ selectively evaluated evidence and did not consider Plaintiff's ability to comply with his medication plan or seek alternate treatment. *Id.* at 12-13. The Commissioner responds that the ALJ considered several relevant factors in determining Plaintiff's credibility and that substantial evidence supports the ALJ's credibility finding. Doc. 25 at 8-12.

Credibility determinations are the province of the ALJ, and reviewing courts may "not disturb a clearly articulated credibility finding supported by substantial

evidence." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Foote,* 67 F.3d at 1562.   When assessing the credibility of subjective complaints, an ALJ considers: (1) evidence of an underlying medical condition; and (2) objective medical evidence either (a) confirming the severity of alleged symptoms, or (b) indicating that the medical condition could be reasonably expected to cause symptoms as severe as alleged.   *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

If objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on his ability to work.   *See* 20 C.F.R. § 404.1529(c)(1); *Wilson*, 284 F.3d at 1225-26; *Foote,* 67 F.3d at 1561.   The ALJ then compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received and other factors concerning limitations and restrictions the symptoms cause.   *See* 20 C.F.R. § 404.1529(c).   "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.   Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true."   *Wilson*, 284 F.3d at 1225 (internal citations omitted).

Here, the ALJ determined that Plaintiff has hypertension, status-post lacunar stroke, headaches, COPD and depression.   Tr. 17.   Yet, the ALJ found that

Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." *Id.* In support, the ALJ noted that a 2012 CAT scan was negative. Tr. 18, 291. For Plaintiff's lung issues, the ALJ pointed to three separate respiratory evaluations in 2012 and 2103 that showed either no abnormalities or minimal, treatable impairments. Tr. 18, 281, 289, 336, 553. The ALJ also noted that objective findings from Plaintiff's mental health evaluations in 2012 and 2013 appeared normal. Tr. 18-19, 335-36, 520. The ALJ further discussed Dr. Marino's opinion that Plaintiff's "subjective allegations about his level of functioning was well beyond what would be expected given the small lacunar nature of the stroke." Tr. 18, 445. In addition, the ALJ noted that Plaintiff's hypertension remains aggravated until he takes his medicine, but that he kept months' worth of blood pressure medicine at his home and declined to take it. Tr. 18, 568. "In addition to the lack of compliance," the ALJ continued, "he was unwilling to adjust his medications to control this impairment." Tr. 18.

The Court finds that the ALJ appropriately analyzed Plaintiff's non-compliance with prescribed treatment. Tr. 18. Remand is appropriate when the "ALJ 'primarily if not exclusively' relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for the failure." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 (11th Cir. 2015) (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003)). Accordingly, if an ALJ relies primarily on non-

compliance in finding a claimant not credible, he should adequately examine the claimant's ability to financially afford prescribed treatment or seek alternative treatment. *Id.* at 1268-69. Here, in contrast to *Henry*, the ALJ's decision was primarily based on the analysis of Plaintiff's medical evidence, which included a discussion of Plaintiff's noncompliance with prescribed treatment. Tr. 17-19; *cf. id.* Furthermore, the ALJ noted that regarding Plaintiff's depression, Plaintiff "refused medication and did not think it would work." Tr. 18, 519. In addition, the ALJ discussed Plaintiff's financial ability to afford treatment. Tr. 17. The ALJ found that although Plaintiff alleges to have no funds to pursue treatment to quit smoking, Plaintiff testified that "he receives money from his mother to continue purchasing the cigarettes." Tr. 17, 46.

The ALJ further discussed additional factors, including that Plaintiff smoked a half pack of cigarettes a day and did not modify his dietary habits to reduce his sodium intake or make many attempts at exercise. Tr. 17, 46, 568. The ALJ also noted that Plaintiff received unemployment compensation benefits, requiring him to attest that he was ready, willing and able work, which directly contradicted his Social Security application allegations. Tr. 19, 450. The ALJ further noted that although Plaintiff said that he does not walk and that he is mostly bed-ridden, he goes to the grocery store. Tr. 17, 233. In contrast to Plaintiff's statement that he cannot stare or read, he watches a lot of television. Tr. 17, 233. Plaintiff also complained of slurred speech, but the ALJ detected no slurred speech during the hearing. Tr. 17, 234. Although Plaintiff further said he cannot think or answer questions, the ALJ

found that during the hearing, Plaintiff exhibited no such impairment. Tr. 17, 229. "Overall," the ALJ concluded, "his inconsistent statements and testimony [do] not reflect the intense, persistent, and limiting effects of the impairments." Tr. 17.

"The question is not . . . whether the ALJ could have reasonably credited [a claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). The record reveals no reversible error in the ALJ's assessment of Plaintiff's credibility. The ALJ compared Plaintiff's statements with his daily activities, medication treatment and the objective medical evidence, and found his statements to be only partially credible. Tr. 17-20. Nonetheless, the Court will direct the ALJ to reevaluate Plaintiff's credibility because the Court finds remand appropriate on other grounds.

In the alternative, Plaintiff challenges the ALJ's assessment of his RFC. Doc. 24 at 13. The RFC is the most that a claimant can do despite his limitations. *See* 20 C.F.R. § 404.1545(a). At the hearing level, the ALJ in the fourth sequential step has the responsibility of assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements. 20 C.F.R. § 404.1545(a). The claimant's age, education, work experience, and whether he can return to his past relevant work are considered in determining his RFC, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)), and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite his impairments. *Phillips v. Barnhart*, 357

F.3d 1232, 1238 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

Plaintiff argues that the ALJ has a burden "to consider all medically determinable impairments, and the symptoms arising therefrom, regardless of whether the affliction was in or out of the control of [Plaintiff.]" Doc. 24 at 14. Plaintiff points to the ALJ's finding that his symptoms are not as severe as alleged because Plaintiff did not comply with or adjust his medications to comport with recommended treatment plans. *Id.* Plaintiff contends that this finding violates 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920 because the ALJ held that "symptoms and limitations from medically determinable impairments can only be considered if they result, as a matter of law, from events beyond a claimant's control." *Id.* Plaintiff relies on the Eleventh Circuit case of *Pendley v. Heckler* for the proposition that the ALJ should consider all medical impairments, including those within Plaintiff's control, and alleges that the ALJ in this case erred by not accounting for the full range of the Plaintiff's impairments. *Id.*; 767 F. 2d 1561 (11th Cir. 1985).

This argument is not persuasive. Plaintiff points to 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii), which provisions require ALJs to "consider the medical severity of [the claimant's] impairment(s). If [the claimant] do[es] not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, [the ALJ] will find that [the claimant is] not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). In contrast, this

language applies to the second step of the sequential evaluation process, not to a RFC assessment. Even so, these regulations do not address whether symptoms are within a claimant's control, but require the ALJ to "consider the medical severity of [the claimant's] impairment" and weigh it accordingly. *Id.*

Furthermore, the Court already found that as part of assessing Plaintiff's RFC, the ALJ properly considered Plaintiff's non-compliance with prescribed treatment and lack of medication adjustment and discounted Plaintiff's credibility. Tr. 17-19. The ALJ also provided several other reasons, such as a lack of objective medical evidence, Plaintiff's daily activities, and his refusal to exercise, reduce sodium intake or stop smoking. *Id.* The ALJ's discussions comply with 20 C.F.R. § 404.1529(c)(3)(i, iv-v), which require the ALJ to consider several factors.

In addition, the Court finds that Plaintiff's reliance on *Pendley* is misplaced. The Eleventh Circuit remanded in *Pendley* because at the hearing for a claimant who had no counsel present, the ALJ did not adequately frame the series of hypotheticals to the VE to account for the claimant's severe mental impairments. *Pendley*, 767 F. 2d at 1562-63. In this case, Plaintiff was represented by an attorney, who did not object to the ALJ's hypotheticals. Doc. 24 at 14; Tr. 61-67. Accordingly, this Court finds that the ALJ did not err in assessing Plaintiff's RFC. Nonetheless, because this case must be remanded for the ALJ to consider and address the DVR's decision, the Court also will direct the ALJ to reevaluate Plaintiff's credibility and RFC.

## V.    Conclusion

Upon review of the record, the undersigned concludes that for the reasons cited in this Opinion and Order, the ALJ erred by not considering or addressing the decision of the Florida Division of Vocational Rehabilitation (Tr. 409-10) concerning Plaintiff's disability or further developing the record in this regard.

ACCORDINGLY, it is hereby

**ORDERED:**

1.    The decision of the Commissioner is **REVERSED,** and this matter is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to:

   A.    Consider and address the decision of Florida Division of Vocational Rehabilitation concerning Plaintiff's disability;

   B.    Fully develop the record to ascertain the evidence used by Florida Division of Vocational Rehabilitation in rendering its disability decision;

   C.    Reevaluate the opinion of Eric S. Gerken, D.C.;

   D.    Reassess Plaintiff's RFC and credibility in light of the findings in this Opinion and Order; and

   E.    Conduct any further proceedings deemed appropriate.

2.    The Clerk of Court is directed to enter judgment in favor of Plaintiff Jay Kevin Collier and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 7th day of September, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record